**KAVAS, Plaintiff-Appellee, v. BARRY, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23679.   Decided May 23, 1956.

Payer, Bleiweiss & Crow, for plaintiff-appellee.
Anthony J. Trivison, John M. Drain, for defendant-appellant.

(CONN, PJ, DEEDS and FESS, JJ, of the Sixth District, sitting by designation in the Eighth District.)

## OPINION

**By CONN, J:**

Plaintiff brought his action against defendant in the court of common pleas, seeking to recover damages for personal injuries alleged to have been sustained by reason of the negligence of defendant.

In his petition, plaintiff alleged that the defendant was the owner of a two-family dwelling house in the City of Cleveland; that on March 12, 1952, plaintiff, pursuant to the performance of his duties as a window washer, was on a ladder resting upon the outside of the second floor of said house to the rear, when, by reason of the negligence of defendant, the siding and rear porch support fastened thereto came loose, causing plaintiff to fall to the ground; that said siding was rotten and the support for said porch attached thereto was in an unsafe condition, all of which defendant well knew; that plaintiff sustained painful and permanent injuries, incurred medical expenses and lost wages as a direct and proximate consequence of defendant's negligence, to his damage in the sum of $10,000.00, for which plaintiff prays judgment.

Subsequently, plaintiff's petition was amended by interlineation, whereby he alleged injuries to his heart and liver and that pre-existing conditions of his heart and liver were aggravated. However, the jury was instructed not to consider any injury to the liver as no evidence of such injury was offered by plaintiff.

Defendant filed an answer and cross-petition, in which he admits ownership of said property and further answered by way of general denial. At the close of the evidence, the court granted plaintiff's motion for judgment on defendant's cross-petition.

Plaintiff's petition contained five separate specifications of negligence on the part of defendant, as the proximate cause of the alleged injuries he sustained, but at the conclusion of all the evidence, in the absence of the jury, counsel for plaintiff informed the court that he wished to withdraw four of the five specifications of negligence and confine his case "solely to the issue of whether or not the defendant voluntarily undertook to repair the porch and failed to do so in a proper manner."

Thereupon the court concisely restated the issue which would be submitted to the jury, and which plaintiff accepted, as follows:

"Did the defendant voluntarily undertake the repair and, second, having done so, did he do it in such a manner as to be careless under the law, and was that the proximate cause of any injuries sustained by plaintiff."

The jury returned a verdict for plaintiff in the sum of $10,000.00. Thereafter, judgment was entered on the verdict and in said amount, from which defendant appeals to this court on questions of law.

Defendant relies on a number of errors of the trial court, which we abridge and restate as follows:

1. Plaintiff failed to substantiate the allegations in his petition as to his position at the time of his fall, or as to how the accident occurred, and that the verdict of the jury is against the weight of the evidence.

2. The court erred in its charge to the jury as to right of the plaintiff to be on the premises and as to duty of defendant in making repairs.

3. The court improperly withheld the entire allegations of plaintiff's petition from the jury.

4. The court erred in failing to direct a verdict for defendant, and particularly in failing to direct such verdict on the contributory negligence of plaintiff as a matter of law.

5. That the verdict of the jury is excessive.

It is undisputed that defendant was the owner of the two-family dwelling house, and that plaintiff sustained some injury when he fell from the porch at the side and towards the rear of said house; that the tenants, desiring to have all the windows washed, except basement windows, arranged with plaintiff, an experienced window washer, to perform the labor; that the said dwelling house was not in good state of repair, particularly the front porch and said side porch; that a week or so before plaintiff was injured, defendant and a workman did some repair work to the side porch, but the evidence is in sharp conflict as to what repair work was done, having particular reference to the railing or banister.

The evidence is also undisputed that plaintiff undertook to perform said labor and had washed several windows, and in order to wash the windows of the upper apartment over the side porch, plaintiff placed his three-extension, 18-foot ladder on the floor of the side porch, and raised it up through a hole in the roof boards of said porch and leaned it against the side of the house.

From this point on, the evidence offered by plaintiff relating to the way and manner plaintiff fell from the porch, is confusing and in material respects conflicting.

There is also a substantial variance as between the allegations of the petition and the testimony of plaintiff. In his petition, plaintiff alleged that he was on the ladder on the outside of the second floor when the accident occurred, but as we shall point out later, plaintiff testified he had finished washing the window and had come down from the ladder.

As a part of plaintiff's evidence in chief, the wife of the tenant downstairs testified that defendant had fixed the "rail" on the side porch on or "about a week maybe or so" before plaintiff fell off the porch, and that after defendant had worked on the porch, she had used it every day in shaking her rugs.

On cross-examination, this witness testified that the ladder plaintiff used to reach the window over the porch stood on the floor of the porch and leaned against the house; that plaintiff stepped down the ladder to the porch floor and turned to the left between the banister and the ladder; that he had in his hands "things to clean windows with"; that

after plaintiff came down the ladder and turned to the left, he touched the banister "and the banister broke down with him."

This witness further testified on cross-examination, that following plaintiff's fall, the ladder still remained in its original position on the porch; that plaintiff, after his fall, got up and finished the windows, two in number, on the first floor.

On direct examination, plaintiff testified as to the way he set up his three-section ladder on the side porch, running it through an opening in the porch roof, so as to enable him to wash the upstairs window over the side porch; that after he had finished, he came down the ladder with his "squeegee" in his pocket and a little sponge "I had on the ladder"; that, when he got down, he took the ladders apart, and further said:

"I trying to turn around myself and I hit the railing with the ladder a little bit and all that railing and everything fly down, and I went with my ladder, with them, and I fell on my right side on a railing and ladder."

Plaintiff further stated that he had finished all the windows before he fell, but later said he washed two windows on the first floor after he was injured.

On cross-examination, plaintiff testified that his ladder was in three sections, each six feet long, making an extension ladder 18 feet long; that he came down the ladder after he washed the window, took the ladders down, "all three together, one on top of the other and put them on my shoulder and trying to walk down from the porch, and I drag with the ladder to the railing."

Plaintiff testified that he had put the ladders against the wall while he picked up his pail, and further:

"Then what did you do? A. I turned around and tried to walk down and I touched with the ladder the rail and in a minute my balance from the ladder went with them.

"Q. Then did you pick up your ladders after the pail?

"A. I had—I had the ladders on my shoulders already and reaching for the pail."

It is quite clear from plaintiff's testimony that he sustained his injuries after he had set the ladder on the porch floor and, while thus placed, he used the ladder to reach the window in the upper apartment, and had come down and re-assembled his ladder, placed it on his shoulder, turned to pick up his pail, lost his balance, "touched" the banister, and then fell, taking the ladder and railing with him to the driveway at the side of the porch.

It also appears that the banister was securely fastened to the porch post but due to decay of the siding, which plaintiff had observed while washing the window, the upper part of the porch frame pulled loose from the side and went down with the porch post, but it does not appear that any defect in the porch floor or banister caused the ladder to fall; or that any portion of the porch lumber struck plaintiff as it fell.

The trial court charged the jury that the plaintiff had the burden of proof to sustain his claims, by a preponderance of the evidence; that the

defendant had undertaken to make repairs to said property; second, if you so find, did he do the work in a careless way; and third, was such the direct and proximate cause of plaintiff's alleged injuries.

The court then charged the jury as follows:

"I say to you as a matter of law, that under the facts in this case that the plaintiff had a right to be on, at and near the premises for the purpose of washing the windows. I further say to you that one who voluntarily undertakes to repair premises which he owns and leases to somebody else is bound to use reasonable and ordinary care and deligence in making such repairs. The failure so to do would render him liable for injuries caused by want of such due care."

After further charging the jury, that it must determine by a preponderance of the evidence if defendant had undertaken to "make these repairs," the court said:

"Next, having undertaken it, did he do that in such manner as to leave the premises, that porch that is involved here, in a defective condition and was his failure thus to do the cause of the fall, if the plaintiff did have such fall? * * *"

Thereafter, the court charged the jury fully on contributory negligence and on assumption of risk.

The determinative issue of fact in this case appears to be, what was the proximate cause of plaintiff's fall and consequent injuries? As already pointed out, the court in the first instance charged the jury that plaintiff had the burden of proof to show that the alleged negligence of defendant was the direct and proximate cause of plaintiff's injuries. but immediately following, in two instances, the court stated to the jury that failure of the defendant to use ordinary care in making said repairs would make defendant liable. The court also omitted, as above stated, to bring to the jury's attention, that plaintiff had the burden of proof on the issue of causal relation.

Moreover, the court omitted to define or explain to the jury the term "proximate cause," thus providing the jury with a yardstick in its determination of this material fact issue relating to plaintiff's right to recover in this action.

This court has reached the conclusion that, on the whole record, to which attention has been called, the jury was confused and that its verdict is manifestly against the weight of the evidence and the judgment thereon should be reversed and defendant granted a new trial.

In view of our conclusion and that the case may be retried, we wish to make the following observations:

The record discloses that plaintiff received medical attention immediately following his injury, from a Dr. Walters, who took an x-ray of plaintiff's chest and put a bandage on him; that he went to see this doctor ten or twelve times; that about a year later, he went to the Cleveland Clinic, as he had trouble breathing, where he remained six weeks. Later he went back a second time for three weeks and still later, he returned to said Clinic a third time for a period of seventeen days.

Plaintiff also testified that he had a Dr. Schur all the time, whom he described as his family doctor.

The records of the Cleveland Clinic were brought in and identified by its Medical Record Librarian, and marked Exhibit A, but were not introduced in evidence.

Neither Dr. Walters nor Dr. Schur were called as witnesses by plaintiff, and the record discloses no reason why this medical testimony was not given to the jury.

However, when the trial opened, plaintiff called as its first witness a Dr. Jerome Frankel, who qualified as a specialist on internal medicine, and who had examined plaintiff about three years after the injury and some months before the trial, and who also had taken from plaintiff a case history, but had not examined the hospital records, nor conferred with the attending physicians. The testimony of Dr. Frankel covered a broad field of physical infirmity, particularly relating to diseases of the heart, lungs, blood pressure, shortness of breath, etc., and was predicated only upon his personal observations at the time he examined plaintiff and on plaintiff's case history.

Furthermore, Dr. Frankel testified in an argumentative fashion in support of his opinion, which in effect permitted plaintiff to cross-examine his own witness and to use this testimony as a means of presenting to the jury the soundness of the conclusion of plaintiff's expert witness before the credibility of that conclusion had been attacked by cross-examination by opposing counsel.

Where a medical expert answers a hypothetical question based upon testimony properly admitted, such witness is permitted to give his reasons by way of explanation of his answer, but not to the extent as in the instant case. **Fox v. Industrial Comm., 162 Oh St 569; Nelson v. Industrial Comm., 150 Oh St 1.**

We observe further, that the court in its charge omitted to instruct the jury that it was incumbent on plaintiff to establish the premise included in the hypothetical question by a preponderance of the evidence, and further that expert testimony is entitled to just such weight as the jury deems it is entitled to.

**Haas v. Kundtz, 94 Oh St 238; 39 O. Jur., Sec. 290, 993.**

However, in the absence of objection on the part of defendant, or a request for further instructions by him, the error is nonprejudicial

We have considered the remaining assignments of error and have reached the conclusion that they were not prejudicially erroneous and should not be sustained.

Cause remanded to the common pleas court for a new trial, costs to abide final judgment.

DEEDS and FESS, JJ, concur.